## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EZEQUIEL MARTINEZ AS TRUSTEE OF 7015 HEATHERS PLACE LAND TRUST, | § § § | |
| *Plaintiff*, | § § | Civil Action No.  SA-12-CV-789-XR |
| v. | § § | |
| WELLS FARGO BANK, N.A., BARRETT DAFFIN FRAPPIER TURNER & ENGEL LLP, and THOMAS E. BLACK, JR., | § § § § | |
| *Defendants*. | § § | |

## ORDER

On this day the Court considered Wells Fargo's motion to dismiss Plaintiff's amended complaint (Doc. No. 15). For the following reasons, the Court GRANTS the motion.

## I. Background

### A. Parties

Plaintiff Ezequiel Martinez, as trustee of the 7015 Heathers Place Land Trust ("Plaintiff"), purchased property located at 7015 Heathers Place, San Antonio, Texas pursuant to a general warranty deed and brings this lawsuit in connection with a scheduled foreclosure sale of the property. Defendant Wells Fargo Bank, N.A. ("Wells Fargo") claims to be the current mortgagee and servicer of the mortgage loan at issue. Defendant Barrett Daffin Frappier Turner & Engel LLP ("BDFTE") is Wells Fargo's foreclosure counsel. Defendant Thomas E. Black, Jr. ("Black") is identified as the "Trustee" in the relevant deed of trust.

1

**B. Factual Background**

On May 30, 2007, Roberto M. Gomez and JoAnn Viruzo Gomez obtained a mortgage loan from Everett Financial Inc., d/b/a Supreme Lending ("Everett") in the amount of $122,450.00. Both Roberto Gomez and JoAnn Gomez executed a note and a deed of trust to close the transaction. An assignment document was recorded on April 26, 2012, that purported to transfer Everett's interests in the note and deed of trust to Wells Fargo.[1] Plaintiff alleges that after Wells Fargo "became involved with the loan, the Plaintiffs [sic] began to notice an unusual amount of fees being charged, and also a number of discrepancies with the transfer of the loan."[2]

Although not explicitly stated in the amended complaint, it appears that at some point Roberto Gomez and JoAnn Gomez fell behind on their mortgage payments. Plaintiff alleges that on March 29, 2012, "in an attempt to procure a second chance for the Gomez's [sic], Plaintiff purchased the property via a general warranty deed and began to attempt to negotiate with the Defendant concerning their [sic] ownership of this note and possible modification of same."[3]

Despite Plaintiff's alleged efforts, the property was scheduled to be sold at a non-judicial foreclosure sale on August 7, 2012. Plaintiff filed his original petition in state court

---

[1] The assignment document is titled "Assignment of the Mortgage" and was executed the same day it was recorded. The assignment purports to transfer the mortgage "together with the note(s)" from "MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR EVERETT FINANCIAL, INCORPORATED, DOING BUSINESS AS SUPREME LENDING, ITS SUCCESSORS AND ASSIGNS" to "WELLS FARGO BANK, NA."  The document was signed by "Azza A. Zarroug, Assistant Secretary" on behalf of MERS. *See* Doc. No. 15-4.

[2] Am. Compl. ¶ 5.

[3] Am. Compl. ¶ 3. Plaintiff provides no other allegations that explain how he purchased the property in some attempt to assist Roberto Gomez and JoAnn Gomez.

that same day and a temporary restraining order was issued enjoining the sale.[4] To date, it appears that the property has not been sold.

**C. Procedural Background**

Plaintiff filed his original petition in the 73rd Judicial District Court of Bexar County, Texas and named Wells Fargo, BDFTE, and Black as defendants. Plaintiff alleged causes of action to quiet title, for violation of Chapter 12 of the Texas Civil Practice and Remedies Code, for breach of contract, and for declaratory judgment. Wells Fargo and BDFTE each filed separate answers in state court.

Wells Fargo removed the action to this Court on August 20, 2012, alleging diversity jurisdiction. Wells Fargo argued that there was complete diversity because the two non-diverse defendants, BDFTE and Black, were fraudulently joined.

Wells Fargo filed a motion to dismiss for failure to state a claim and Plaintiff filed a motion for leave to amend pleadings, which the Court granted.[5] Plaintiff's amended complaint remains the live pleading.

In his amended complaint, Plaintiff alleges causes of action to quiet title, for violation of Chapter 12 of the Civil Practice and Remedies Code, for violation of the UCC, for declaratory judgment, and an "alternative" cause of action for breach of contract. Although the caption of Plaintiff's amended complaint names Wells Fargo, BDFTE and Black as defendants, the body of Plaintiff's amended complaint only names Wells Fargo and BDFTE as defendants.

---

[4] Doc. No. 1-7.

[5] *See* Doc. No. 13. Because Plaintiff filed his amended complaint within 21 days of the filing of Wells Fargo's motion to dismiss, the Court noted that leave was not required pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).

Wells Fargo subsequently filed a motion to dismiss the amended complaint for failure to state a claim. Wells Fargo contends that the amended complaint fails to state a claim because Plaintiff lacks standing to assert any individual claims against Wells Fargo, Plaintiff lacks standing to challenge the assignment, Wells Fargo is not obligated to produce the note in order to foreclose, Plaintiff has failed to state a plausible claim for filing a false lien, Plaintiff has failed to state a plausible claim for breach of contract, Plaintiff has failed to state a plausible claim for violations of the UCC, and Plaintiff has failed to state a plausible claim to quiet title. Wells Fargo also contends that Plaintiff is not entitled to declaratory relief, injunctive relief, or attorney's fees. Plaintiff filed a response brief, and Wells Fargo filed a reply.

## II. General Considerations

### A. Legal Standard for Deciding a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a

legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

**B. Documents That May Be Considered**

When ruling on a motion to dismiss, a court may consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

In this case, Wells Fargo attached copies of the promissory note, the deed of trust, and the assignment document to both its initial motion to dismiss and to its motion to dismiss the amended complaint. All three documents are central to Plaintiff's case and are referenced throughout both the original petition and the amended complaint. Accordingly, the Court will consider all three documents when ruling on Wells Fargo's motion to dismiss the amended complaint.

### III. Causes of Action Alleged in Plaintiff's Amended Complaint

**A. Cause of Action to Quiet Title**

"The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App .—Waco 1980, writ ref'd n.r.e.). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Angell v. Bailey*,

5

225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Johnson v. Williams*, No. 01-05-00445-CV, 2006 WL 1653656, at *4 (Tex. App.—Houston [1st Dist.] June 15, 2006, pet. denied) (mem. op.)).

"The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Nonetheless, the plaintiff still "has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn*, 321 S.W.3d at 531.

Accordingly, a plaintiff's suit to quiet title depends on its establishing that the claim asserted by the defendant (1) constitutes a hindrance having the appearance of a better right to title than its own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid. *Gordon*, 352 S.W.3d at 42.

Here, Plaintiff has alleged that he has an interest in the property because he purchased the property via a general warranty deed. Wells Fargo claims a right to foreclose on the property pursuant to the deed of trust. Although Wells Fargo appears to have a valid right to foreclose on the property, Plaintiff alleges that Wells Fargo in fact does not have standing to foreclose for reasons not apparent from the faces of the note, deed of trust, and assignment document.[6]

---

[6] In its motion to dismiss, Wells Fargo argues that Plaintiff lacks standing to assert any individual claims against it because Plaintiff is not a party to the note and deed of trust. However, a claim to quiet title does not require a plaintiff to be a party to a contract with the defendant.

Nonetheless, the Court's inquiry as to whether Plaintiff has stated a plausible claim to quiet title does not end here because Wells Fargo contends that the arguments in support of Plaintiff's claim to quiet title fail as a matter of law. In his amended complaint, Plaintiff alleges that Wells Fargo does not have standing to foreclose because 1) it is not the holder or owner of the note, and 2) because the assignment of the mortgage was invalid. The Court will consider each argument in turn.

### 1. Plaintiff's Argument that Wells Fargo is Not the Holder or Owner of the Note

In his amended complaint, Plaintiff argues that Wells Fargo does not have standing to foreclose because "[u]nder the contract in question only the 'Lender' can foreclose" and the deed of trust defines the "Lender" in part as "any holder of the note who is entitled to receive payments."[7]

Under Texas law, a holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM. CODE § 1.201(b)(21)(A). "A person can become the holder of an instrument when the instrument is issued to that person, or he can become a holder by negotiation." *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing TEX. BUS. & COM. CODE § 3.201 cmt. 1). When the instrument is payable to an identified entity, "negotiation requires transfer of possession of the instrument and its indorsement by the holder." *Id.* (quoting TEX. BUS. & COM. CODE § 3.201(b)).

In this case, the note has an indorsement that states the following: "WITHOUT RECOURSE PAY TO THE ORDER OF Wells Fargo Bank, N.A." The indorsement is signed by "Lori K. Venegonia." Ms. Venegonia's title is listed as "Vice President—Loan

---

[7] Am. Compl. ¶¶ 4, 8.

Documentation Wells Fargo Bank, N.A. POA for Everett Financial Inc. DBA Supreme Lending."[8] The copy of the note and the indorsement suggest that Wells Fargo became the holder of the note by negotiation. Specifically, the copy of the note suggests that Wells Fargo is in possession of the note and the indorsement suggests that the note was indorsed to Wells Fargo by someone with power of attorney for the original holder, Everett. Accordingly, as holder, Wells Fargo has authority to foreclose pursuant to the terms of the deed of trust.

In his amended complaint, Plaintiff does not specifically allege that the indorsement on the note is invalid for any reason. Thus, the Court must presume that the indorsement is authentic. *See* TEX. BUS. & COM. CODE § 3.308(a) ("[T]he authenticity of, and authority to make, each signature on the instrument are admitted unless specifically denied in the pleadings."). Nor does Plaintiff specifically allege that Wells Fargo is not in possession of the note. Accordingly, the Court finds that Plaintiff's amended complaint fails to allege sufficient facts establishing that Wells Fargo is not the holder of the note.[9] As a result, Plaintiff's amended complaint does not allow the Court to draw the reasonable inference that Wells Fargo lacks authority to foreclose on the property. Plaintiff's action to quiet title, as it relates to Wells Fargo's standing to foreclose, is therefore implausible and must be dismissed.

---

[8] The words "Everett Financial Inc. DBA Supreme Lending" are handwritten while the rest of Ms. Venegonia's title is typed.

[9] In his response to Wells Fargo's motion to dismiss, Plaintiff does address the copy of the note. Specifically, Plaintiff states:

> There is [sic] indications on the face of the note that the note has been "doctored" by the Defendant. An original endorsement appears to have been crossed out an [sic] initialed by an "EP". Then another endorsement is stamped on which is signed by a Lori K. Venegonia. Mrs. Venegonia appears to work for Wells Fargo and states that she has a "POA" for Everett. However, this "POA" giving her authority to endorse this document is not attached to the motion and Everett's information is written in. When was this endorsement stamp put on the document[?] Why are there three endorsements to Wells Fargo? Are any of the three valid?

Response ¶ 5, Doc. No. 18. Plaintiff's questions to the Court do not constitute specific allegations of fact sufficient to support a claim to relief. Moreover, regardless of the statements in Plaintiff's response, the amended complaint is still devoid of any specific allegations impugning the validity of the note or the indorsement to Wells Fargo, and the amended complaint is the relevant document for determining whether Plaintiff has stated a plausible claim to relief.

### 2. Plaintiff's Argument that the Assignment of the Note and Deed of Trust was Invalid

In his amended complaint, Plaintiff also alleges that Wells Fargo does not have standing to foreclose because the assignment of the note and deed of trust to Wells Fargo was invalid. Specifically, Plaintiff alleges that the assignment document is invalid because:

> It is unknown who Azza A. Zarroug really is, or in what capacity he is working because he is not listed as an "assistant secretary" of MERS. Plaintiff believes this individual is a "robo-signer[.]" Plaintiff believes that Azza A. Zarroug is a non-lawyer employee or independent contractor of Barrett, Daffin, Frappier, Turner & Engel, LLP or of its mortgage processing subsidiary."[10]

Wells Fargo argues that Plaintiff lacks standing to challenge the assignment because Plaintiff was not a party to the assignment and because Plaintiff's allegations "rest on sheer speculation."

The Court need not reach the question of whether the assignment in this case was invalid. Even if the assignment was void, the documents central to Plaintiff's case suggest, and no factual allegations controvert, that Wells Fargo would have authority to foreclose pursuant to the terms of the deed of trust because Wells Fargo is the holder of the note.

### B. Cause of Action Under Chapter 12 of the Civil Practice and Remedies Code

In connection with his claim under Chapter 12 of the Civil Practice and Remedies Code, Plaintiff alleges that Wells Fargo "through its agent Azza A. Zarroug through their [sic] foreclosure counsel, Barrett, Daffin, Frappier, Turner, and Engel caused to be filed in the Bexar County Deed [sic] records a document called 'Assignment of Mortgage[.]' The document asserted and [sic] interest in the deed of trust/lien interest against the Plaintiff's

---

[10] Am. Compl. ¶ 4.

property."[11] Plaintiff also contends that "Defendants both Wells Fargo and Barrett were aware at the time of the filing that the signature [sic] of Zarroung [sic] and the notary were digitally reproduced signatures and were therefore fraudulent and void. The Defendants knew they were recording and [sic] inaccurate and fake document which would asset [sic] and [sic] interest in a lien interest of the Plaintiff."[12]

Wells Fargo argues that Plaintiff fails to state a claim to relief under Chapter 12 because the assignment does not constitute a "lien" as defined by section 12.001 and because Plaintiff has not pleaded sufficient facts to support a finding that the assignment is fraudulent or was executed without authority.

Although Plaintiff does not refer to a specific section of Chapter 12 in his amended complaint, Plaintiff does incorporate significant portions of section 12.002(a) into his amended complaint. Section 12.002(a) provides:

> (a) A person may not make, present, or use a document or other record with:
>
> (1) knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;
>
> (2) intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property;
>
> and
>
> (3) intent to cause another person to suffer:
>
>> (A) physical injury;

---

[11] Am. Compl. ¶ 24.
[12] Am. Compl. ¶ 24.

(B) financial injury; or

(C) mental anguish or emotional distress.[13]

"The party asserting a claim under section 12.002 has the burden to prove the requisite elements of the statute." *Aland v. Martin*, 271 S.W.3d 424, 430 (Tex. App.—Dallas 2008, no pet.).

Federal district courts have held that in order to state a claim under section 12.002, a plaintiff must allege that the challenged document purported to *create* a lien or claim against property, not merely *transfer* a lien or claim against property. In *Marsh v. JPMorgan Chase Bank, N.A.*, 888 F. Supp. 2d 805 (W.D. Tex. Aug. 29, 2012), the district court found that the plaintiffs' fraudulent lien claim under section 12.002 should be dismissed because an assignment of a deed of trust from one entity to another did not constitute a "lien" under section 12.002(a). The court supported its conclusion with the following reasoning:

> Section 12.001 defines a "lien" as "a claim in property for the payment of a debt and includes a security interest." The plain and common meaning of the statute's words do not suggest the Texas legislature intended to include mortgage assignments within the purview of Chapter 12. The assignment or transfer of an interest in property is distinct from a "claim" in property. This conclusion is supported by the legislative history of the chapter, which was added by House Bill 1185 by the 75th Texas Legislature in 1997. According to the House Bill Analysis, the purpose of the section was to "creat[e] a private cause of action against a person who files fraudulent judgment liens or fraudulent documents purporting to *create* a lien or claim against real or personal property in favor of a person aggrieved by the filing."

*Id.* at 813 (emphasis and alteration in original) (citations and footnotes omitted). Federal courts have relied on *Marsh* and found that a plaintiff fails to state a claim under section 12.002 where the challenged document is an assignment. *See, e.g., Jaimes v. Fed. Nat'l Mortg. Ass'n*, -- F. Supp. 2d ---, 2013 WL 1136535, at *3 (W.D. Tex. Mar. 19, 2013) ("To the

---

[13] TEX. CIV. PRAC. & REM. CODE § 12.002(a).

extent [the plaintiff] asserts the assignment . . . was itself fraudulent, his claim fails because both the plain language and legislative history of [section 12.002] indicate it was never intended to apply to mortgage assignments."); *Saucedo v. Deutsche Bank Nat'l Trust Co.*, No. SA-12-CV-868-DAE, 2013 WL 656240, at *5 (W.D. Tex. Feb. 20, 2013) (holding that the plaintiffs failed to state a claim to relief under section 12.002 because the challenged assignment document "[did] not purport to create a lien or claim"). Other federal courts have independently reached the same conclusion. *See, e.g.*, *Garcia v. Bank of New York Mellon*, 3:12-CV-0062-D, 2012 WL 692099, at *3 (N.D. Tex. Mar. 5, 2012) (dismissing the plaintiffs' claim under section 12.002 on the grounds that the plaintiffs had not pleaded facts to establish that either an assignment of the deed of trust or a substitute trustee's deed was a lien as defined by section 12.001).

In his response to Wells Fargo's motion to dismiss the amended complaint, Plaintiff contends that the "argument that the fraudulent assignment does not create a lien or claim on title is simply incorrect."[14] Plaintiff relies on the case of *Kingman Holdings, LLC v. CitiMortgage, Inc.*, No. 4:10-CV-619, 2011 WL 1883829 (E.D. Tex. Apr. 21, 2011), *rec. adopted*, 2011 WL 1878013, in support of his position. In *Kingman*, the Magistrate Judge recommended that a plaintiff's claim under section 12.002, which was similarly based on an allegedly fraudulent assignment document, survive the defendants' motion to dismiss.[15]

---

[14] Response ¶ 19.

[15] The Magistrate Judge in *Kingman*, however, was not presented with the argument that an assignment does not fall within the purview of Chapter 12. Rather, the defendants in *Kingman* argued that the plaintiff's section 12.002 claim lacked plausibility because it rested on legal conclusions instead of facts and that the plaintiff had failed to allege facts to show that a defendant made, presented, or used the assignment with knowledge that it was a fraudulent court record or a fraudulent lien or claim against property, that a defendant intended the assignment be given the same legal effect as a court record evidencing a valid lien against property, and that a defendant intended to cause another person to suffer financial injury. In light of these arguments, the Magistrate Judge recommended that "[d]iscovery should be allowed, and after discovery is completed, the issue of whether there is a valid claim under § 12.002 can be determined by a motion for summary judgment." *Id.* at 6.

Plaintiff also argues that the assignment "is the document talked about in Chapter 51[16] wherein the party foreclosing is the party 'of record' claiming an interest in the 'security interest[.]'"[17] Plaintiff contends that "[t]o state that an assignment is not the use of a 'document or other record' with knowledge that the document is 'a fraudulent court document or a fraudulent lien **or claim against real or personal property or an interest in real or personal property**'" is "to stand the statute on its head."[18]

Although Plaintiff's argument is somewhat difficult to decipher, Plaintiff appears to be highlighting the fact that the plain language of section 12.002(a) is not limited to documents that create a fraudulent "lien." Plaintiff is correct in this regard. In addition to prohibiting the use of documents that create a fraudulent "lien," the plain language of section 12.002(a) also prohibits the use of documents that create a fraudulent "claim against real or personal property or an interest in real or personal property." Here, the assignment document creates a claim[19] to the deed of trust, and the deed of trust constitutes an interest in real property. Thus, the assignment document could be said to have created a "claim against . . . an interest in real or personal property" and therefore fall within the purview of section 12.002. Also, the assignment document could be said to have "created" a claim for Wells Fargo against the property itself because, upon the filing of the assignment document, Wells Fargo obtained a claim against the property that Wells Fargo did not possess before. Namely, Wells Fargo was

---

[16] Plaintiff is presumably referring to Chapter 51 of the Texas Property Code. Chapter 51 of the Texas Property Code governs the procedure for conducting a foreclosure sale and authorizes a mortgagee to sell real property "under a power of sale conferred by a deed of trust." *See* TEX. PROP. CODE § 51.002. The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4).

[17] Response ¶ 19.

[18] Response ¶ 19 (emphasis in original).

[19] The term "claim" is not defined in either section 12.002 or section 12.001. However, Black's Law Dictionary defines "claim" in part as "[t]he aggregate of operative facts giving rise to a right enforceable by a court."

13

conferred, among other rights, the right to foreclose on the property pursuant to the terms of the deed of trust.

While this Court is aware of no Texas appellate court that has explicitly ruled on whether an assignment of a deed of trust can fall within the scope of section 12.002, at least one Texas appellate court has held that a "Substitution of Trustee" document could support liability under the statute. *See Bernard v. Bank of America, N.A.*, No. 04-12-00088-CV, 2013 WL 441749 (Tex. App.—San Antonio Feb. 6, 2013, no pet.) (holding that a fraudulent "Substitution of Trustee" document that purported to substitute the beneficiary under the Deed of Trust could support liability under section 12.002). The *Bernard* opinion suggests that the language of section 12.002 should not be read especially narrowly.

Nonetheless, even if an assignment of a deed of trust falls within the purview of section 12.002(a), the Court finds that Plaintiff's amended complaint fails to state a claim against Wells Fargo under section 12.002 in this case because the amended complaint does not allege sufficient facts to show, or even suggest, that Wells Fargo acted with intent to cause Plaintiff physical injury, financial injury, or mental anguish or emotional distress. Plaintiff does not allege any facts suggesting that Wells Fargo intended to harm Plaintiff in any way, nor does Plaintiff allege that Wells Fargo had any motive to harm Plaintiff or that Wells Fargo even knew that Plaintiff owned the property. At one point in his amended complaint, Plaintiff does state that "the Defendants" violated Chapter 12 "with the intent to cause Plaintiff to suffer (1) Financial Injury [and] (2) Mental Anguish or Emotional Distress." However, these allegations are conclusory and merely parrot back the language of the statute. Thus, they are insufficient to support a plausible claim to relief. *See Twombly*, 550 U.S. at 544 (to survive a

14

motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

Accordingly, the Court finds that Plaintiff's claim against Wells Fargo under Chapter 12 of the Civil Practice and Remedies Code fails to state a claim upon which relief can be granted.

## C. Cause of Action for "UCC Violations"

In connection with his cause of action for "UCC Violations," Plaintiff alleges that Wells Fargo is "not the holder of the note in question such that it can [not] prove the . . . elements of holder status" and cites section 3.301, 3.309, and 3.418(d) of the Texas Business and Commerce Code.[20] Plaintiff alleges that "[p]ursuant to § 3.203 of the Texas Business and Commerce Code, Defendant Bank has no right to enforce the instrument due to the fraud and illegal acts of transferring the note and deed of trust after the closing date of the PSA [sic][21] and by reason of the fraudulent assignment of the documents."[22] Finally, Plaintiff states that "[p]ursuant to § 3.301 & 3.309 the Plaintiff would assert that the Defendant Bank is not the holder or owner of the note and deed or [sic] trust and cannot establish the chain of title such that Defendant can prove that Defendant bank [sic] has the right to foreclose."[23]

Plaintiff's arguments have already been addressed in the context of Plaintiff's claim to quiet title. As described above, the documents central to Plaintiff's case suggest that Wells Fargo became the holder of the note through negotiation. Plaintiff has not alleged that the

---

[20] Am. Compl. ¶ 20.
[21] In addition to this reference to a "PSA," Plaintiff's amended complaint makes one other sporadic reference to a pooling and servicing agreement by stating that "deadlines established by the Defendant or the Assignors [sic] pooling and serving [sic] agreements have already passed." *See* Am. Compl. ¶ 18. However, the amended complaint provides no discussion of how a pooling and servicing agreement might be relevant to this case.
[22] Am. Compl. ¶ 21.
[23] Am. Compl. ¶ 22.

indorsement of the note to Wells Fargo is invalid or that Wells Fargo is not in possession of

the note. Accordingly, Plaintiff has failed to state a claim under the UCC.

**D. Cause of Action for Breach of Contract**

    With regard to his cause of action for breach of contract, Plaintiff's amended

complaint alleges the following:

> This cause of action is pled in the alternative and is only upon proof that the
> Defendant is the holder. Plaintiffs [sic] would assert that under the note that upon
> payment of the note [sic] that the Plaintiffs [sic] are entitled to proper credit for all
> payments received via insurance or credit default swaps. Plaintiffs [sic] would
> assert that Defendant has been paid in [sic] by multiple insurance policies and
> credit default swaps, such that, in the event that Defendant is the holder that
> Defendant is not entitled to foreclose but Plaintiff is entitled to credit for all
> payments received against the debt due on the note. Plaintiff asserts that they [sic]
> are entitled to specific performance.[24]

 "The elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff

performed or tendered performance; (3) the defendant breached the contract; and (4) the

plaintiff was damaged as a result of the breach." *Richter v. Wagner Oil Co.*, 90 S.W.3d 890,

898 (Tex. App.—San Antonio 2002, no pet.).

    Based on these allegations, Plaintiff's cause of action for breach of contract fails to

state a plausible claim for several reasons. For one, Plaintiff has not alleged facts establishing

that there is a valid contract between him and Wells Fargo. Plaintiff has not alleged that he is

a party to the note or deed of trust, nor has Plaintiff alleged that he assumed the mortgage loan

when he purchased the property or that he is acting under power of attorney for Roberto

Gomez and JoAnn Gomez. Furthermore, even if Plaintiff had standing to bring this breach of

contract cause of action, Plaintiff fails to state a plausible claim for breach of contract because

---

[24] Am. Compl. ¶ 26. Plaintiff has asserted a nearly verbatim allegation in at least one other case before this Court.
*See Washington v. JP Morgan Chase*, SA-11-CV-763-XR, 2013 WL 636054, at *13 (W.D. Tex. Feb. 20, 2013).

he has failed to allege that either he or the original borrowers performed under the terms of the note. *See Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) ("It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." (internal quotation marks omitted)). Although Plaintiff makes vague references to "payments received via insurance or credit default swaps," he does not allege facts sufficient to demonstrate that the payments, even if paid on behalf of Roberto Gomez and JoAnn Gomez, would have been sufficient to constitute performance.

As a result of the foregoing analysis, the Court finds that Plaintiff's amended complaint fails to state any plausible claim against Wells Fargo. Consequently, Wells Fargo's motion to dismiss the amended complaint must be granted.

### IV. Subject Matter Jurisdiction

Although Plaintiff has not contested jurisdiction or filed a motion to remand, the Court has "a continuing obligation to examine the basis for [its] jurisdiction" and may raise the issue *sua sponte* at any time. *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990). Wells Fargo removed this action to this Court based on diversity of citizenship. While it is undisputed that Plaintiff, BDFTE and Black are all citizens of Texas for diversity purposes, Wells Fargo contends that complete diversity exists because BDFTE and Black were both fraudulently joined.

### A. Improper Joinder[25]

"[U]nder the fraudulent joinder doctrine, federal removal jurisdiction premised on diversity cannot be defeated by the presence of an improperly-joined nondiverse and/or in-

---

[25] Although there is no substantive difference between the terms "improper joinder" and "fraudulent joinder," the Fifth Circuit has held that "improper joinder" is preferred. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc).

state defendant." *Salazar v. Allstate Texas Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006). A removing party may establish improper joinder by showing: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Since Wells Fargo has not alleged actual fraud, the only relevant inquiry in this case is the second. Accordingly, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* To predict whether a plaintiff has a reasonable basis of recovery under state law, a court may "conduct a Rule 12(b)(6)-type analysis." *Id.* A court must also bear in mind that removal jurisdiction is determined on the basis of claims in the state court petition as it exists at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

### 1. Whether Defendant Black was Improperly Joined

In its notice of removal, Wells Fargo argued that Black was improperly joined because Plaintiff failed to allege any factual basis to recover against him and because Plaintiff failed to allege any causes of action against him. Upon review of the state court petition, the Court finds that Wells Fargo is correct that Plaintiff did not specifically allege a cause of action against Black. Thus, there was no possibility of recovery against him.[26]

---

[26] Plaintiff appears to have acknowledged that Black was improperly joined because almost all references to Black were removed in the amended complaint.

### 2. Whether Defendant BDFTE was Improperly Joined

In its notice of removal, Wells Fargo argued that there was no possibility of establishing a cause of action against BDFTE "because BDFTE is merely a representative and/or agent of Wells Fargo Bank, N.A., who was acting only in that capacity as attorney for the anticipated foreclosure sale."[27] Wells Fargo contended that "the only causes of action Plaintiff may have, if any, would be against Wells Fargo, the real party in interest."[28]

A lawyer is immune for actions that are "within the bounds of the law." *Mendoza v. Fleming*, 41 S.W.3d 781, 787 (Tex. App.—Corpus Christi 2001, no pet.). Plaintiff's original petition alleged that BDFTE would not be immune from liability in this case because the "law firm is a 'foreclosure mill' involved in filing fraudulent liens."[29] This allegation was conclusory and failed to allege facts suggesting that BDFTE would not be immune from liability in this case. Joinder of BDFTE was therefore improper on this basis alone.

Furthermore, even if BDFTE were not immune, Plaintiff still could not have possibly recovered on his causes of action against BDFTE as they were alleged in the state court petition. Liberally construed, Plaintiff's state court petition appears to have alleged causes of action against BDFTE for breach of contract and for violation of section 12.002 of the Civil Practice and Remedies Code.

---

[27] Not. Removal ¶ 14.
[28] Not. Removal ¶ 14.
[29] Orig. Pet. ¶ 15.

With regard to his cause of action for breach of contract, Plaintiff's original petition indiscriminately alleged that "Defendants breached the Deed of Trust contract."[30] Plaintiff did not allege that BDFTE was a party to the contract or that BDFTE ever assumed any interest in the contract.

With regard to his cause of action under section 12.002 of the Civil Practice and Remedies Code, Plaintiff's original petition was replete with conclusory allegations. Specifically, Plaintiff alleged that BDFTE was "in violation of Chapter 12 of the Texas Civil Practices [sic] and Remedies Code for filing fraudulent liens," that the law firm is a "foreclosure mill" involved in filing fraudulent liens, that "the assignment of [sic] deed of trust was prepared by [BDFTE] or its affiliates for Wells Fargo Bank, N.A.," and that BDFTE "or its affiliates executed and filed a fraudulent lien for Wells Fargo Bank, N.A."[31] None of these statements suggested that BDFTE intended to cause Plaintiff any type of injury, mental anguish, or emotional distress, which is a prerequisite for establishing a claim under 12.002(a). The original petition also described findings that were allegedly published in a "Review" from the Office of the Inspector General of the U.S. Department of Housing and Urban Development.[32] However, the described findings were wholly unrelated to BDFTE's conduct in this case.

Accordingly, based on the causes of action and factual allegations asserted in Plaintiff's original state court petition at the time of removal, the Court finds that there was no reasonable basis to predict that Plaintiff might have been able to recover against either BDFTE

---

[30] Orig. Pet. ¶ 17.
[31] Orig. Pet. ¶¶ 15 – 17.
[32] *See* Orig. Pet. ¶¶ 13 – 14.

or Black. The Court therefore concludes that BDFTE and Black were improperly joined and that, as a result, there is complete diversity of citizenship.[33]

**B. Dismissal of BDFTE and Black is Appropriate**

Once ruled improperly joined, a defendant is effectively dismissed from the action. *Akerblom v. Ezra Holdings Ltd.*, No. 12-20182, 2013 WL 363112, at *7 (5th Cir. Jan. 28, 2013) (per curiam). An improperly joined defendant may be dismissed under Federal Rule of Civil Procedure 21. *Id.* Since the Court has found that both BDFTE and Black were improperly joined, dismissal pursuant to Rule 21 is appropriate.

### V. Conclusion

In light of the foregoing analysis, the Court finds that Plaintiff's amended complaint fails to state a claim against Wells Fargo upon which relief can be granted. Accordingly, Wells Fargo's motion to dismiss the amended complaint (Doc. No. 15) is GRANTED. Wells Fargo's motion to compel expert disclosures or alternatively to strike (Doc. No. 20) is therefore DISMISSED AS MOOT.

The Court also finds that Defendants BDFTE and Black were improperly joined to this action. Accordingly, Defendants BDFTE and Black are DISMISSED WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 21. BDFTE's motion to dismiss without prejudice pursuant to Texas Property Code section 51.007 (Doc. No. 26) is therefore DISMISSED AS MOOT.[34]

---

[33] Since the amount in controversy exceeds $75,000, this Court therefore has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

[34] In its motion to dismiss, BDFTE argues that Texas Property Code section 51.007 mandates that the causes of action against it be dismissed without prejudice because BDFTE filed a verified denial in state court asserting that BDFTE had been named solely in its capacity as appointed substitute trustee and because Plaintiff did not timely file a response rebutting the verified denial. However, it is not clear that the language of section 51.007 would apply to BDFTE in this case because the deed of trust defines the "trustee" as "Thomas E. Black, Jr.," it is not

No claims remain pending in this case.

The Clerk is directed to enter judgment that Plaintiff take nothing. Defendants are awarded their costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of judgment.

It is so ORDERED.

SIGNED this 12th day of April, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

apparent that BDFTE was appointed as substitute trustee, and Plaintiff's original petition does not name BDFTE in a capacity as trustee. *See Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 707 (N.D. Tex. 2011) (holding that a law firm was not subject to dismissal under section 51.007 because the law firm had not established itself as a trustee for purposes of section 51.007). Nonetheless, the Court need not reach the issue because the Court has found that BDFTE was improperly joined to the state court petition for the reasons discussed herein.

22